## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

**ANGELA WILLIAMS**,

     Plaintiff,

  vs.

**CREDIT CONTROL SERVICES, INC. d/b/a/ CREDIT COLLECTION SERVICES, INC.**

     Defendant.

**Case No.** 3:24-cv-03031-TLB

## DEFENDANT CREDIT COLLECTION SERVICES' ANSWER AND AFFIRMATIVE DEFENSES

AND NOW comes Defendant, Credit Collection Services, Inc. d/b/a Credit Collection Services, by and through its undersigned counsel and hereby answers Plaintiff's Complaint as follows:

## I. ANSWER TO INTRODUCTION.

1. Admitted in part and denied in part. CCS admits that Plaintiff has brought an individual claim seeking actual and statutory damages for CCS' alleged violations of the TCPA and FDCPA. CCS denies it violated the FDCPA, the TCPA or that Plaintiff can recover any damages absent a viable FDCPA or TCPA claim. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

2. Denied. CCS denies Plaintiff's characterization of her Shelter Insurance Company ("SIC") debt as "non-existent" because Plaintiff's SIC debt was valid, due and owing. CCS also denies her debt arises from a consumer credit transaction, as the debt at issue was for premiums earned by SIC for providing car insurance. CCS

1

lacks sufficient knowledge or information to form a belief as to whether Plaintiff obtained the car insurance primarily for personal, family or household purposes and therefore, CCS denies this allegation.

3.    Admitted in part and denied in part. CCS admits that it sent letters to Plaintiff's address in Berryville, Arkansas in an attempt to collect a debt starting in September 2022. CCS denies that it engaged in any conduct that was false, deceptive, abusive, unfair, unreasonable or unlawful when attempting to collect Plaintiff's SIC debt obligation.

4.    Admitted in part and denied in part CCS admits that it sent Plaintiff text messages in an attempt to collect Plaintiff's SIC debt obligation. CCS denies that it uses an Automated Telephone Dialing System ("ATDS"). CCS further asserts that Plaintiff provided express consent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract to for insurance. CCS also denies that "repeatedly" sent Plaintiff text messages. In fact, CCS only sent 10 text messages between October 6, 2022 and August 3, 2023.[1] There was never more than 2 text messages in a given month and CCS stopped sending text messages to Plaintiff after receipt of Plaintiff's letter on August 10, 2023, which disputed the debt and requested that all future communication be in writing. CCS also denies that it engaged in any conduct that

---

[1] Text messages were sent by CCS to Plaintiff on or about October 6, 2022; October 20, 2024; November 3, 2022; December 21, 2022; January 20, 2023; February 17, 2023; May 5, 2023; June 17, 2023 and August 3, 2023.

could be deemed harassing. Unless admitted, the remaining allegations set forth in this paragraph are denied.

5.     Denied. CCS denies that it engaged in any conduct that could be deemed harassing. CCS denies Plaintiff's characterization of her SIC debt as "non-existent" because Plaintiff's SIC debt was valid, due and owing. CCS denies it violated the FDCPA, the TCPA or that Plaintiff can recover any damages absent a viable FDCPA or TCPA claim. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

## II. ANSWER TO JURISDICTION AND VENUE

6.     Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

7.     Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

8.     Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

9.     Admitted in part and denied in part. CCS admits that, at times, it attempts to collect debts owed to others by means of interstate commerce in the State of Arkansas. CCS denies Plaintiff's characterization of her SIC debt as "non-existent" because Plaintiff's SIC debt was valid, due and owing. By way of further answer, whether CCS transacts business in Arkansas is a conclusion of law. CCS refers all questions of law to the Court. Unless admitted, the remaining allegations are denied.

10.     Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

11.     Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

12.     Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

### III.     ANSWER TO PARTIES

13.     No response is required to this paragraph as Plaintiff is merely incorporating her allegations in prior paragraphs by reference.  To the extent that a response is deemed necessary, CCS incorporates its responses to Paragraphs 1 through 12 as though fully set forth herein at length.

14.     Admitted in part and denied in part. CCS admits that Plaintiff is a natural person.  CCS lacks sufficient knowledge or information to form a belief as to whether Plaintiff has resided in Carroll County, Arkansas at all times relevant to the allegations in the Complaint and therefore, CCS denies this allegation. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law.  CCS refers all questions of law to the Court.

15.     Denied. CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court. CCS asserts that it did not violate the FDCPA or the TCPA and that Plaintiff did not suffer a concrete injury-in-fact. As such, CCS asserts that Plaintiff lacks Article III standing to bring her claims in federal court.

16.     Admitted in part and denied in part. CCS admits that it is Delaware Corporation with a business address at the location set forth in this paragraph. CCS also admits that, at times, it attempts to collect consumer debts for others. Unless admitted, CCS denies the remaining allegations set forth in this paragraph.

17.     Admitted in part and denied in part. CCS admits that, at times, it uses the mails and interstate commerce in an attempt to collect consumer debts owed to others. CCS denies that it sends text messages using an ATDS. CCS also denies that written consent is required to send text messages using an ATDS. CCS further asserts that Plaintiff provided express consent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract for insurance. CCS denies Plaintiff's characterization of her SIC debt as "non-existent" because Plaintiff's SIC debt was valid, due and owing. Unless admitted, the remaining allegations in this paragraph are denied.

18.     Denied. CCS denies that it does not maintain procedures reasonably adapted to avoid FDCPA and TCPA violations. CCS denies that it violated the FDCPA, the TCPA. CCS denies the remaining conclusory allegations set forth in this paragraph.

19.     Denied. CCS denies that the TCPA is applicable, as CCS did not use an ATDS to send text messages to Plaintiff and also because Plaintiff provided express sent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract for insurance.

5

20.     Denied. CCS asserts that certain FDCPA claims alleged by Plaintiff  are barred the FDCPA's one-year statute of limitations.

### IV.  ANSWER TO LEAVE TO AMEND COMPLAINT

21.     Denied. CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

### V.    ANSWER TO ALLEGED FACTUAL ALLEGATIONS

22.     No response is required to this paragraph as Plaintiff is merely incorporating her allegations in prior paragraphs by reference.  To the extent that a response is deemed necessary, CCS incorporates its responses to Paragraphs 1 through 21 as though fully set forth herein at length.

23.     Denied.  CCS asserts that it did not violate the FDCPA or the TCPA and that Plaintiff did not suffer a concrete injury-in-fact. As such, CCS asserts that Plaintiff lacks Article III standing to bring her claims in federal court. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

24.     Denied. CCS asserts that certain FDCPA claims alleged by Plaintiff  are barred the FDCPA's one-year statute of limitations.

25.     Denied. CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

26.     Denied. CCS denies Plaintiff's characterization of her SIC debt as "non-existent" because Plaintiff's SIC debt was valid, due and owing. CCS also denies her debt arises from a consumer credit transaction, as the debt at issue was for premiums

earned by SIC for providing car insurance. CCS lacks sufficient knowledge or information to form a belief as to whether Plaintiff obtained the car insurance primarily for personal, family or household purposes and therefore, CCS denies this allegation. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

27.    Admitted in part and denied in part. CCS admits that it did not enter into a contract with Plaintiff and admits it does enter into contracts with individual consumers. CCS further admits it is not a creditor and does not extend credit. Unless admitted, the remaining allegations are denied.

28.    Admitted in part and denied in part. CCS admits that, at times, it uses the mails and interstate commerce in an attempt to collect consumer debts owed to third parties. CCS denies that it sends text messages using an ATDS. CCS also denies that written consent is required to send text messages using an ATDS. CCS further asserts that Plaintiff provided express consent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract for insurance. CCS denies Plaintiff's characterization of her SIC debt as "non-existent" because Plaintiff's SIC debt was valid, due and owing. Unless admitted, the remaining allegations in this paragraph are denied.

29.    Admitted in part and denied in part. CCS admits that it sent text messages to telephone number set forth in this paragraph. CCS denies that it began sending text messages to Plaintiff in August 2013. In fact, the first text message sent to Plaintiff by CCS was in October 2022. CCS also denies that these text messages

violated the TCPA as Plaintiff provided express consent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract for insurance. In addition, CCS does not use an ATDS to send text messages. Unless admitted, the remaining allegations set forth in this paragraph are denied.

30.    Admitted in part and denied in part. CCS admits that the text messages were not sent for emergency purposes. CCS admits, upon information and belief, that it had written consent, which is not required for debt collection text messages pursuant to the TCPA. CCS further asserts that Plaintiff provided express consent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract for insurance.

31.    Denied. CCS asserts that Plaintiff has an established business relationship with SIC for whom CCS was acting on behalf as its was hired to attempt collection of Plaintiff's debt obligation. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court. By way of further answer, CCS denies that it sends text message using an ATDS. CCS also denies that written consent is required to send text messages using an ATDS. CCS further asserts that Plaintiff provided express consent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract for insurance.

32.    Admitted in part and denied in part. CCS admits that it received a dispute letter dated August 7, 2023 from Plaintiff on or about August 10, 2023, which

8

disputed the debt, requested verification and advised CCS to only contact Plaintiff in writing. CCS admits that it sent a validation letter in response to Plaintiff's letter, which advised the Plaintiff that SIC is the current and original creditor. CCS denies that the statement that SIC is both the original and current creditor is false, deceptive or misleading. Unless admitted, the remaining allegations in this paragraph are denied.

33.    Admitted in part and denied in part. CCS, upon information and belief, that Plaintiff mailed SIC a letter dated August 10, 2023. CCS lacks sufficient knowledge or information to form a belief as to whether Plaintiff letter was received by SIC or whether SIC responded to Plaintiff's letter and therefore, CCS denies this allegation. Unless admitted, the remaining allegations are denied.

34.    Denied. CCS sent 10 test messages between October 2022 and August 2023. CCS stopped sending text messages upon receipt of Plaintiff's August 7, 2023 letter. CCS denies that it uses an ATDS to send text messages to Plaintiff. By way of further answer, Plaintiff provided express consent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract for insurance.

35.    Admitted in part and denied in part. CCS admits that CCS received a pre-suit letter from Plaintiff on or about June 24, 2024. CCS further admits that it did not respond to Plaintiff's frivolous allegations set forth in her June 24, 2024 letter and this complaint. CCS also admits a copy of the letter is attached to Plaintiff's

complaint as Exhibit D. CCS denies the remaining allegations set forth in this paragraph.

36.     Admitted in part and denied in part. CCS admits that Plaintiff prepared an affidavit and had it notarized. CCS denies the truth and veracity of the averments contained in the affidavit.

37.     Denied. CCS did not send text messages to Plaintiff's phone using an ATDS.

38.     Denied. CCS denies that it sent Plaintiff 13 text messages. CCS denies it sent text messages to Plaintiff's phone using an ATDS. By way of further answer, Plaintiff provided express consent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract for insurance.

39.     Denied. CCS denies that initiating text messages from two different phone numbers would violate the TCPA. CCS denies Plaintiff's characterization of her SIC debt as "non-existent" because Plaintiff's SIC debt was valid, due and owing. CCs denies the remaining conclusory allegations set forth in this paragraph.

40.     Denied. CCS denies that it violated the FDCPA or failed to validate Plaintiff's debt. In fact, Plaintiff's August 7, 2024 letter requesting validation was outside of the 30-day time period which would have required CCS to validate the

debt.[2] Despite not being required by law, CCS still validated the debt and advised the Plaintiff that SIC is both the original and current creditor.

## V.  ANSWER TO COUNT 1
*Alleged violations of the FDCPA and TCPA*

41.    No response is required to this paragraph as Plaintiff is merely incorporating her allegations in prior paragraphs by reference.  To the extent that a response is deemed necessary, CCS incorporates its responses to Paragraphs 1 through 40 as though fully set forth herein at length.

42.    Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

43.    Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

44.    Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

45.    Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

46.    Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

47.    Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court. By way of further

---

[2] CCS sent its initial debt collection letter to Plaintiff on or about September 24, 2022, which provided Plaintiff until November 1, 2022 to dispute the debt and requested validation of the debt. CCS did not receive a written dispute or request for verification during this time frame. See Exhibit A attached to CCS' Answer.

answer, CCS' conduct did not cause Plaintiff's purported damages or injuries, including mental anguish and/or financial losses.

48.     Denied. CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court. BY way of further answer, CCS asserts that Plaintiff misquotes Section 1692c(a) of the FDCPA, which deals with communications to third parties. CCS further denies it sent text messages using an ATDS.

49.     Denied. CCS denies it engaged in any conduct that could be deemed harassing, oppressive or abusive. CCS further denies that sending 10 text messages between October 2022 and August 2023 could be reasonably deemed harassing. By way of further answer, the CFPB, through Regulation F, advised attempting to contact a consumer 7 times within a 7-day period would not constitute harassing conduct. CCS never sent more than one text message in any 7-day period. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

50.     Denied. CCS denies that attempting to collect a debt or referring to Plaintiff as a debtor could be characterized as profane or obscene language. CCS denies Plaintiff's characterization of her SIC debt as "non-existent" because Plaintiff's SIC debt was valid, due and owing. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

51.     Denied. CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court. By way of further answer, CCS asserts that the assumption of risk doctrine ins not applicable to CCS debt collection activity.

52.     Admitted in part and denied in part. CCS admits that it never entered into a contract with Plaintiff. In fact, CCS never advised Plaintiff that it owned the debt or that it was attempting to collect the debt on behalf of any other entity than SIC. CCS denies it violated section 1692e(2) of the FDCPA as it only attempted to collect a debt on behalf of SIC was contractually and legally owed by the Plaintiff. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

53.     Denied. CCS denies it engaged in any conduct that could be deemed false or deceptive. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

54.     Denied. CCS denies it engaged in any conduct that could be deemed unfair or unconscionable. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

55.     Denied. CCS denies it violated section 1692f(1) of the FDCPA as it only attempted to collect a debt on behalf of SIC was contractually and legally owed by the Plaintiff. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

13

56.    Denied. CCS sent Plaintiff an initial collection letter on or about September 24, 2022, which was in the form of the CFPB's Regulation F model letter and included all the required disclosures. *Please see Exhibit A.*

57.    Denied. CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

58.    Denied. CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court. CCS further denies it used an ATDS to send text messages to Plaintiff.

59.    Denied. CCS denies it engaged in any conduct that could be deemed harassing, oppressive or abusive. CCS further denies that sending 10 text messages between October 2022 and August 2023 could be reasonably deemed harassing. By way of further answer, the CFPB, through Regulation F, advised attempting to contact a consumer 7 times within a 7-day period would not constitute harassing conduct. CCS never sent more than one text message in any 7-day period. CCS denies the remaining allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

60.    Admitted in part and denied in part. CCS admits that it sent text messages to Plaintiff on January 20, 2023, February 17, 2023 and May 5, 2023. CCS denies that it did not have consent to text Plaintiff. In fact, Plaintiff provided express consent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract to for insurance. CCS further denies these text messages failed to identify the caller, as

14

each of CCS texts advised the text was being sent by Credit Collection Services. Unless admitted, CCS denies the remaining allegations set forth in this paragraph.

61.     Denied. CCS admits that it sent a validation letter in response to Plaintiff's letter, which advised the Plaintiff that SIC is the current and original creditor. CCS denies that the statement that SIC is both the original and current creditor is false, deceptive or misleading. Unless admitted, the remaining allegations in this paragraph are denied.

62.     Denied. CCS asserts that Plaintiff has misquoted Section 1692e(11) of the FDCPA. Section 1692e(11) only requires that "in an initial communication" a debt collector must advise a consumer that "this is an attempt to collect a debt and any information will be used for that purpose." In subsequent communications, CCS was only required to advise that "this communication was from a debt collector." CCS initial letter sent on September 24, 2022 contained the required disclosure (see Exhibit A) and all additional communications included the statement "this communication was from a debt collector." CCS denies the remaining conclusory allegation set forth in this paragraph.

63.     Denied. CCS asserts that the TCPA is inapplicable as it did not send texts messages to Plaintiff using an ATDS and because it has express consent to contact Plaintiff's telephone number. CCS denies the remaining conclusory allegation set forth in this paragraph.

64.     Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

15

65.    Denied.  CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

### ANSWER PLAINTIFF'S PRAYER FOR RELIEF

Admitted in part and denied in part. CCS denies that Plaintiff is entitled to any recovery against CCS in the absence of any liability on the part of CCS.  CCS denies that Plaintiff has incurred any concrete harm and denies that Plaintiff offers any basis for actual damages, even if Plaintiff is able to articulate a viable FDCPA or TCPA claim against CCS. CCS further denies any liability to Plaintiff and denies that its conduct could give rise to a statutory recovery, let alone an award approaching the statutory cap under the FDCPA. Denied. CCS denies that Plaintiff is entitled to recover her costs, including reasonable attorney's fees, in the absence of violative conduct on the part of CCS.

### V.  ANSWER TO COUNT II
*Common Law Invasion of Privacy*

66.    No response is required to this paragraph as Plaintiff is merely incorporating her allegations in prior paragraphs by reference.  To the extent that a response is deemed necessary, CCS incorporates its responses to Paragraphs 1 through 65 as though fully set forth herein at length.

67.    Denied.  CCS denies it engages in any unlawful conduct and denies it was the proximate cause of the purported injuries and damages suffered by Plaintiff.

68.    Denied. CCS denies the allegations in this paragraph as they consist of conclusions of law. CCS refers all questions of law to the Court.

## ANSWER PLAINTIFF'S PRAYER FOR RELIEF

69.    No response is required to this paragraph as Plaintiff is merely incorporating her allegations in prior paragraphs by reference.  To the extent that a response is deemed necessary, CCS incorporates its responses to Paragraphs 1 through 68 as though fully set forth herein at length.

70.    Denied. CCS asserts that the TCPA is inapplicable as it did not send texts messages to Plaintiff using an ATDS and because it has express consent to contact Plaintiff's telephone number. CCS denies the remaining conclusory allegation set forth in this paragraph.

71.    Admitted in part and denied in part. CCS denies that Plaintiff is entitled to any recovery against CCS in the absence of any liability on the part of CCS.  CCS denies that Plaintiff has incurred any concrete harm and denies that Plaintiff offers any basis for actual damages, even if Plaintiff is able to articulate a viable FDCPA or TCPA claim against CCS. CCS further denies any liability to Plaintiff and denies that its conduct could give rise to a statutory recovery, let alone an award approaching the statutory cap under the FDCPA. Denied. CCS denies that Plaintiff is entitled to recover her costs, including reasonable attorney's fees, in the absence of violative conduct on the part of CCS.

## ANSWER TO DEMAND FOR JURY TRIAL

Admitted in part and denied in part. CCS admits that Plaintiff is requesting a jury by trial. CCS denies that Plaintiff would be entitled to a jury trial as Plaintiff has failed to assert a viable claim against CCS.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

CCS sent Plaintiff an initial collection letter on or about September 24, 2022, which was in the form of the CFPB's Regulation F model letter and included all the required disclosures. *Please see Exhibit A.*

### SECOND AFFIRMATIVE DEFENSE

Plaintiff fails to offer any facts showing false, misleading or deceptive conduct on the part of CCS to plead a viable claim under 1692e.  Further, Plaintiff fails to articulate any facts to establish that CCS attempted to collect a debt not authorized by law or contract. Therefore, the complaint should be dismissed or withdrawn.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff has failed to articulate any factual basis for actual damages. Therefore, Plaintiff's prayer for actual damages should be dismissed or withdrawn.

### FOURTH AFFIRMATIVE DEFENSE

In the event that Plaintiff is able to articulate a viable FDCPA claim against CCS, such a claim is statutory in nature.  The statutory cap under the FDCPA is $1,000 per action. 15 U.S.C. § 1692k(a)(2)(A).  Plaintiff's claims, if valid (which is denied), is worth far less than the statutory cap.

### FIFTH AFFIRMATIVE DEFENSE

Any damages sustained by Plaintiff, if any, were not proximately caused by CCS, but rather the result of Plaintiff's or a third parties' conduct.

### SIXTH AFFIRMATIVE DEFENSE

To the extent that CCS is deemed liable of the FDCPA, the allegedly improper conduct was unintentional, and the result of a bona fide error notwithstanding procedures designed to prevent such error.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff lacks Article III standing as she has not suffered a concrete injury-in-fact.

### EIGHTH AFFIRMATIVE DEFENSE

Portion of Plaintiff's FDCPA claims are barred by the one-year statute of limitations.

### NINTH AFFIRMATIVE DEFENSE

CCS provided the required disclosure set forth in Section 1692e(11) in each communication it had with Plaintiff.

### TENTH AFFIRMATIVE DEFENSE

CCS asserts that sending 10 text messages between October 2022 and August 2023 could be reasonably deemed harassing as it fails within the 7 calls in 7-day safe harbor set forth in the Regulation F. CCS never sent more than one text message in any 7-day period.

### ELEVENTH AFFIRMATIVE DEFENSE

CCS does not use an Automated Telephone Dialing System to send texts to consumers, including the Plaintiff. As such, Plaintiff's TCPA claims fail as a matter of law.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff provided express consent to receive telephone communications, including text messages, when she provided her phone number to SIC at the time she entered into a contract to for insurance. Therefore, Plaintiff's TCPA claims fail as a matter of law and should be dismissed.

## <u>RESERVATION OF RIGHTS</u>

CCS reserves the right to assert any other affirmative defense not provided for herein upon further investigation and discovery.

WHEREFORE, Defendant, Credit Collection Services, Inc. d/b/a Credit Collection Services, prays that this Answer be deemed good and sufficient and that claims against CCS be dismissed with prejudice; that judgment be granted in favor of CCS and that the relief requested by Plaintiff be denied; that all costs be taxed to Plaintiff. CCS reserved its right to recover its defense costs and fees against Plaintiff pursuant to 15 U.S.C. § 1692k(a)(3). CCS respectfully requests that the Court award the requested relief as well as such other and further relief as the Court may deem just and equitable.

Dated: September 6, 2024                    Respectfully Submitted,

CREDIT CONTROL SERVICES, INC.
D/B/A CREDIT COLLECTION
SERVICES

*/s/ Luke K. Chamberlain*
Luke K. Chamberlain (IL 6332539)
Messer Strickler Burnette, Ltd.
142 W. Station Street
Barrington, IL 60010
Tel.: (312) 334-3469
Fax: (312) 334-3473
lchamberlain@messerstrickler.com

*Counsel for Defendants –*
*Credit Control Services, Inc. d/b/a*
*Credit Collection Services*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on September 6, 2024 with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered attorneys of record.

<u>*/s/ Luke K. Chamberlain*</u>
Luke K. Chamberlian

*Counsel for Defendants –*
*Credit Control Services, Inc. d/b/a*
*Credit Collection Services*